FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC -2  AM 8: 32

LORETTA G. WHYTE
      CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SUN DRILLING PRODUCTS CORPORATION | * | CIVIL ACTION |
| VERSUS | * | NO: 04-2266 |
| TEXAS MEXICAN RAILWAY COMPANY | * | SECTION: "D"(4) |

### ORDER AND REASONS

Before the court is the are the following motions filed by Defendant, Texas Mexican Railway Company (Tex Mex):

(1) **"Motion to Dismiss for Lack of Diversity Jurisdiction;"** and

(2) **"Motion Reurging Motion in Limine to Exclude Plaintiff's Expert [Harold Asher]."**

Plaintiff, Sun Drilling Products Corporation (Sun), filed memoranda in opposition. The court heard oral argument from counsel on Wednesday, November 30, 2005. Now, having considered the memoranda and argument of counsel, the record, and the applicable law, the court finds that both motions should be denied.

___ Fee_____
___ Process____
 X  Dktd_____
___ CtRmDep___
___ Doc. No.___

### (1)   "Motion to Dismiss for Lack of Diversity Jurisdiction"

For purposes of diversity jurisdiction, a corporation is a citizen of both its State of incorporation and the State of its principal place of business.  28 U.S.C. §1332(c).

In its Motion to Dismiss, Tex Mex argues that there is lack of diversity between **Tex Mex** (which resides in Texas) and **Sun**. Although Sun is incorporated in Louisiana, Tex Mex maintains that Sun has its "principal place of business" in Texas under the Fifth Circuit's "total activity" test set forth in *Teal Energy USA Inc. v. GT, Inc.*, 369 F.3d 873 (5th Cir. 2004).

> The Fifth Circuit explained that the "total activity" test
>
>> requires us to consider two "focal points:" the location of the corporation's "nerve center" and its "place of activities."  We must examine the totality of the facts, including the corporation's organization and the nature of its activities, to determine which of these focal points predominates. Generally, "when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business ..., when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant ..., but when the activity of a corporation is passive and the 'brain' of the corporation is in another state, the situs of the corporation's 'brain' is given greater significance...."

*Teal*, 369 F.3d at 876 (footnotes omitted).

Tex Mex relies on the following documents in an attempt to show that Texas is Sun's "principal place of business": (1) a press

release produced by Sun; (2) a Dunn & Bradstreet report re: Sun; (3) Sun's tax returns for 2001 and 2002; and (4) documentation re: Sun derived from the worldwide web or Internet. Based on these documents, Tex Mex argues that:

> [a]ll of Sun's sales activity is conducted from Houston. Because almost all income is generated in Houston, and the "nerve center," according to the company's press releases, tax returns, and Dunn & Bradstreet, is located in Houston. With both the nerve center and the most significant business activities located in Houston, the tests and analysis set out in *Teal* compel a finding that [Sun] is a Texas resident.

(*see* Tex Mex's Memorandum, p. 5).

The court finds that Tex Mex makes a good argument, but the court is unconvinced that Sun should be regarded as a citizen of Texas for purposes of determining diversity jurisdiction. Based on the evidence submitted by Sun, the court finds that: (1) Sun is incorporated in the State of Louisiana, Sun is in the business of manufacturing drilling fluid additives, and its manufacturing facility and corporate headquarters are located in Belle Chasse, Louisiana, where "all of the dispatching and financial work is done" (Dep. of Douglas Heller, President of Sun., p. 8; Affidavit of Michael Cook Sun's COO & CFO); (2) Sun's Chief Operating Officer and Chief Financial Officer, Michael Cook, lives in New Orleans, Louisiana, and works at Sun's Belle Chasse Office (Cook Dep. at 8 & Cook Affidavit); (3) Sun employs 18 people out of its manufacturing facility and corporate headquarters in Louisiana

(Cook Affidavit at ¶5); (4) Sun also employs 9 people in Calgary; 5 people in Houston; 2 people in Colorado; 1 person in the United Kingdom and 1 person each in Wyoming and North Dakota (Cook Affidavit at ¶6); and (5) all corporate business operations and records, including payroll, human resources, accounting, finance and administration are performed and maintained in Louisiana (Cook Affidavit at ¶7).

Considering the totality of the facts, including Sun's organization and the nature of its activities, the court concludes that the balance of the relevant factors dictate that Louisiana (and not Texas) is Sun's "nerve center" and "place of activities." Thus, Louisiana (and not Texas) is Sun's "principal place of business" under *Teal's* "total activity" test. Although Sun clearly has an important presence in Houston, that does not outweigh the greater significance of its manufacturing and corporate business operations in Louisiana. *Accord, J.A. Olson Co. v. City of Winona, Mississippi*, 818 F.2d 401 (5th Cir. 1987)(under "total activity" test, the principal place of business of a corporation, that had executive offices in Chicago and its sole manufacturing plant in Mississippi, was Mississippi).

Accordingly;

**IT IS ORDERED** that Tex Mex's **"Motion to Dismiss for Lack of Diversity Jurisdiction"** be and is hereby **DENIED**.

### (2) "Motion Reurging Motion in Limine to Exclude Plaintiff's Expert [Harold Asher]"

In Tex Mex's original "Motion in Limine to Exclude Plaintiff's Expert [Harold Asher]," Tex Mex argued that Mr. Asher (a CPA who rendered a report for Sun concerning the damages Sun allegedly sustained as a result of Tex Mex's alleged breach of the Exclusive Licensing Agreement entered between Tex Mex and Sun) should not be allowed to testify at Trial because he conducted no independent investigation and improperly relied on information supplied to him by "D.J. Fournerat."

The court denied Tex Mex's "Motion in Limine to Exclude Plaintiff's Expert [Harold Asher]" in a ruling entered on June 8, 2005. (*See* Order, Doc. No. 84). In that ruling, the court also ordered that the perpetuation deposition of D.J. Fournerat, who was not listed as a witness on the Pre-Trial Order submitted by the parties on May 11, 2005, be taken. That deposition was filed into the record on August 11, 2005. (*See* Fournerat Dep., Doc. No. 100).

In Tex Mex's **"Motion Reurging Motion in Limine to Exclude Plaintiff's Expert [Harold Asher],"** Tex Mex now argues that "[t]he Fournerat deposition certainly shows that Asher - at best - misapplied the information received from Fournerat" and that Asher's testimony should be stricken under *Daubert*. (Tex Mex. Memo. at 2).

5

Having read Mr. Fournerat's deposition, together with Mr. Asher's report and the memoranda submitted by the parties, the court reiterates that "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the [fact-finder's] consideration." See Order, Doc. No. 84, P. 4, quoting *U.S. v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).

> Here, in this **non-jury** matter, "the perceived flaws" in how Mr. Asher formulated his opinion on Sun Drilling's lost profits "are matters properly to be treated in the crucible of adversarial proceedings; they are not the basis for truncating that process." *U.S. v. 14.38 Acres of Land*, 80 F.3d at 1079

(*See* Order, Doc. No. 84, pp. 4-5, footnote omitted).

Accordingly;

**IT IS ORDERED** that Tex Mex's **"Motion Reurging Motion in Limine to Exclude Plaintiff's Expert [Harold Asher]"** be and is hereby **DENIED.**

New Orleans, Louisiana, this _2_ day of _Dec_, 2005.

_____
A.J. MCNAMARA
UNITED STATES DISTRICT JUDGE